# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 14, 2011       Decided February 28, 2012

No. 09-3091

UNITED STATES OF AMERICA,
APPELLEE

v.

MARC ACCARDI,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00009-1)

———

*Jonathan S. Zucker*, appointed by the court, argued the cause and filed the briefs for appellant.

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III*, *John P. Mannarino*, and *Julieanne Himelstein*, U.S. Attorneys.

Before: GARLAND, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit* Judge: Appellant Marc Accardi pled guilty to one count of transportation of child pornography and one count of possession of child pornography. On appeal, he challenges the duration and conditions of his supervised release. Because the district court committed no plain error, we affirm.

I

On November 22, 2008, Marc Accardi entered a public internet chat room using the alias "Jerkinoff" and struck up a conversation with an individual who claimed to be an adult male pedophile living in Washington, D.C. Unbeknownst to Accardi, he was actually communicating with Detective Timothy Palchak of the Metropolitan Police Department, who was working undercover with the FBI's Innocent Images Task Force. Accardi told Detective Palchak that he "had an interest in children" ranging in age "from baby on up." During the conversation, Accardi sent the detective thirteen images of prepubescent children engaging in sexual activity with adult men.

Law enforcement personnel executed a search warrant at Accardi's residence in Scranton, Pennsylvania on December 19, 2008. Agents retrieved thousands of images of young children from Accardi's computer; most of the pictures showed children under the age of 12 having sexual contact or relations with adults. Accardi was subsequently charged, in Washington, D.C., with transportation and possession of child pornography. Pursuant to a signed plea agreement and statement of offense, Accardi pled guilty to both charges at a May 5, 2009 hearing before the United States District Court for the District of Columbia.

On September 2, 2009, the district court sentenced Accardi to concurrent terms of 100 months of incarceration for each count of his indictment. The court also imposed a 40-year term of supervised release, during which Accardi would be required to comply with a number of conditions. At no point during the sentencing hearing did Accardi or his counsel object to any aspect of the sentence.

In this appeal, Accardi challenges the duration of his supervised release and three of its conditions: (1) a ban on "patroniz[ing] any place where pornography or erotica can be accessed or is expressly offered, obtained or viewed, including establishments where sexual entertainment is available, [such as] adult bookstores, peep shows or adult entertainment establishments"; (2) a restriction on his use of a "computer that has access to any online computer service at any location, including [his] place of employment, without the prior approval of the probation office"; and (3) participation in and successful completion of a "residential . . . or outpatient substance abuse treatment program, specifically directed toward alcohol abuse, which can include testing and detoxification service as approved and directed by the probation office." Transcript of Sentence at 30–32.

II

We review all of Accardi's challenges for plain error because they were not raised before the district court. *United States v. Sullivan*, 451 F.3d 884, 892 (D.C. Cir. 2006). To prevail under the demanding plain error standard, an appellant must show that the district court made: (1) a legal error; that was (2) plain or obvious; and that (3) affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 733–34 (1993). Once plain error is established, this Court may exercise its

discretion to correct plain error only where the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 736. It is appellant's burden to demonstrate that he has met these requirements. *United States v. Smith*, 267 F.3d 1154, 1160 (D.C. Cir. 2001).

Accardi argues that the forty-year term of supervised release was procedurally unsound because the district court incorrectly applied the Sentencing Guidelines and failed to adequately explain the sentence. Accardi also argues that the duration of the term was substantively unsound because it created an unwarranted sentencing disparity among similarly situated offenders. None of his arguments have merit.

As a threshold matter, we reject the government's contention that Accardi waived any appeal of the length and conditions of his supervised sentence or "invit[ed]" the alleged error. Appellee's Br. at 8. A defendant may waive his right to appeal his sentence as part of a plea bargain only if the waiver is "knowing, intelligent, and voluntary." *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009). For a waiver to be "knowing" and "intelligent," the court must assure itself that the defendant is "aware of and understands the risks involved in his decision." *Id*. In the context of a plea bargain, such a determination is usually made at the plea hearing, at which the court can fully explain the consequences of the waiver by informing the defendant of exactly what rights he is giving up and what rights he retains. *See id*. at 528.

No such colloquy occurred, so we cannot be sure Accardi knew that he would waive his ability to challenge his sentence by addressing the district court at his September 2, 2009 sentencing hearing. Accardi merely said that he would "take lifetime probation supervision . . . I just ask and I beg for

leniency and to send me home to my family. I'm willing to do anything—any restrictions you want to place, I'm willing to do that and more[.]" Transcript of Sentence at 19–20. The substance of Accardi's statement does not align with the sentence handed down by the district court. By "beg[ging] for leniency and [asking the judge] to send [him] home to [his] family", *id.,* Accardi clearly offered to accept lifetime supervised release as an *alternative* to jail time. Nowhere did he indicate his willingness to accept the sentence he now challenges, which consists of *both* an extended term of incarceration *and* lifetime supervised release accompanied by many burdensome restrictions.

We therefore turn to Accardi's allegations of procedural error. A sentencing court can commit procedural error "by failing to calculate (or improperly calculating) the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). The Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. 108–21, codified at 18 U.S.C. § 3583(k), authorized the imposition of a lifetime period of supervised release for sex offenders. The relevant Sentencing Guideline defines "sex offense" as "(A) an offense, perpetrated against a minor, under… (iii) chapter 110 of [title 18 United States Code]," U.S.S.G. § 5D1.2 cmt. n. 1. Accardi pled guilty to violations of § 2252A, which is part of Chapter 110.

Accardi contends his offenses, possessing and distributing child pornography, do not fall within § 5D1.2 because they were not "perpetrated against a minor." We—along with Congress, the Supreme Court, and every federal court to address this issue—disagree. As the victim impact statements in this case show, child pornography creates an indelible record of the children's participation in a traumatizing activity, and the harm to the child is only

exacerbated by the circulation of the materials. *See New York v. Ferber*, 458 U.S. 747, 759 (1982); Child Pornography Protection Act of 1996, Pub. L. No. 104-208, § 101(a)(2), 110 Stat. 3009, 3009 (2006) (finding that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years"). Moreover, four different circuits have rejected precisely the argument that Accardi makes here. *See United States v. Daniels,* 541 F.3d 915, 924 (9th Cir. 2008) (explaining that "merely possessing child pornography is not a victimless crime; it fuels the demand for the creation and distribution of child pornography"); *United States v. Pugh*, 515 F.3d 1179, 1196 (11th Cir. 2008) ("The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children…"); *United States v. Gonzalez,* 445 F.3d 815, 819 (5th Cir. 2006) (rejecting claim that "mere consumption" of child pornography is not "an offense perpetrated directly against a minor"); *United States v. Kimler,* 335 F.3d 1132, 1147 (10th Cir. 2003) (holding that possession and consumption of child pornography are crimes "perpetrated against a minor"). No other federal court has accepted Accardi's argument, and we will not be the first.

Accardi also claims the district court failed to adequately explain his sentence, in violation of Section 3553(c). We find the district court's reasons for imposing a 40-year sentence to be apparent from the record. The court explained the conduct underlying Accardi's offenses was "of grave concern," Transcript of Sentence at 26, because "[t]here was very aggressive sexual activity [in the images] when compared to some of the other images that I've seen in other cases." *Id*. at 23. The judge noted Accardi claimed he had sexual contact with a six-year-old, *id*. at 25, and noted his apparent

willingness "to take this beyond looking at images," *id.* at 26. She further explained that like drug or alcohol dependency, rehabilitative treatment is "not a cure" and is "something that you'll have to deal with for the rest of your life." *Id.* She subsequently explained that supervised release is a "very critical piece," the purpose of which is to "monitor and require a program, when in the community, [to] prevent any reoccurrence. *Id.* at 28. This extended discussion about Accardi's particular crimes and the purposes of supervised release makes clear that the district court based the sentence on what was reasonably necessary to protect the public, prevent a reoccurrence, and provide Accardi with treatment. *See Rita v. United States*, 551 U.S. 338, 356–57 (2007) ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation . . . Unless a party contests the Guidelines sentence generally under § 3553(a) . . . or argues for departure, the judge normally need say no more.")

Finally, Accardi argues that the 40-year term was substantively unreasonable because the court failed to give reasonable weight to one of the statutory factors: "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). He notes that two other targets of Detective Palchak's undercover operation received less jail time and substantially smaller periods of supervised release, even though both targets transmitted more images to Detective Palchak than Accardi did. *See United States v. Hedgpeth*, 1:08-cr-00251-RWR; *United States v. Slagle*, 1:08-cr-00308-HHK. We disagree.

The Supreme Court has held that courts of appeals may presume that a Guidelines-compliant sentence is reasonable. *Rita*, 551 U.S. at 350–51. This circuit applies that

presumption, *see United States v. Dorcely,* 454 F.3d 366, 376 (D.C. Cir. 2006), and Accardi fails to rebut it.  Without more, two allegedly similar cases constitute too small a sample size to support a finding of an "unwarranted disparity" in sentences, particularly when the district court explained that the images distributed by Accardi were much more aggressive and troubling than the images distributed by other offenders. In light of this finding, it is far from clear that the disparity, if any, was "unwarranted."  Moreover, a number of circuits have upheld lifetime terms of supervised release for defendants convicted of possession of child pornography based on the same general concerns about recidivism, protection of the public, and rehabilitation that animated the district court's decision here.  *See Daniels*, 541 F.3d at 924 ("The district court was within its discretion to conclude that a lifetime term of supervised release was necessary to punish Daniels…, to rehabilitate him, and to protect the public[.]"); *United States v. Cope*, 527 F.3d 944, 952 (9th Cir. 2008) (basing sentence on general concerns about recidivism and protection of the public); *United States v. Planck,* 493 F.3d 501, 506 (5th Cir. 2007); *Gonzalez*, 445 F.3d at 819 ("The Court finds a supervised release term of life will benefit society and reflects the Court's experience that persons rarely get better in these types of cases.").   In light of the particular factual circumstances of this case and the caselaw approving similar sentences, we find the district court did not substantively err in ordering a 40-year term of supervised release.

III

Under Section 3583(d), each condition of supervised release must be reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional

needs. In applying these standards, "sentencing judges are afforded wide discretion when imposing terms and conditions of supervised release." *Sullivan*, 451 F.3d at 895. Because Accardi failed to lodge any objection to his sentence before the district court, we review the district court's imposition of the terms and conditions of supervised release for plain error. *Id*.

We conclude the district court did not plainly err in imposing any of the challenged conditions, though we do subject the prohibition on patronizing any place where pornography is available to a limiting construction to prevent it from being impermissibly vague.

Accardi first challenges the condition barring him from "patroniz[ing] any place where pornography or erotica can be accessed or is expressly offered, obtained, or viewed, including establishments where sexual entertainment is available, adult bookstores, peep shows, or adult entertainment establishments." Transcript of Sentence at 31. He claims the condition, as imposed, is overbroad, because it gives his future probation officer the power to arbitrarily define "pornography or erotica" and could be construed to ban him from places not directly related to the goals of sentencing, such as bookstores, newsstands, and even the Library of Congress.

Accardi notes a governmental restriction can be impermissibly vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). He points to *United States v. Loy*, 237 F.3d 251, 266 (3d Cir. 2001), which held that a supervised release condition prohibiting the defendant from possessing "pornography" was unconstitutionally vague. "[W]ithout a more definitive standard to guide the probation

officer's discretion," the court warned, "there is a real danger that the prohibition on pornography may ultimately translate to a prohibition on whatever the officer personally finds titillating." *Id*.

The condition imposed upon Accardi is different from the one invalidated in *Loy*. The district court's restriction on Accardi's access to "pornography and erotica" refers to those terms as part of a more general prohibition on "patroniz[ing] establishments where sexual entertainment is available," which is accompanied by examples illustrating the intended scope of the prohibition. While we agree with Accardi that the condition, if enforced using the broadest plausible interpretation, could lead to constitutionally problematic results, we do not believe the district court intended to prevent Accardi from going to the library or buying a newspaper. To avoid any constitutional problem—and to give effect to the intent of the district court—we construe the ban as limited to places like those enumerated in the condition's "including" clause, *i.e.*, places in which adult entertainment is the primary offering. At argument, the government agreed this is the meaning intended, and the defendant agreed that so construed the condition is not impermissibly vague.

Next, Accardi challenges the district court's ban on "possess[ion] or use [of] a computer that has access to any online computer service at any location, including [his] employment, without the prior approval of the probation office," claiming this condition is more restrictive than necessary because it gives the probation officer "unchecked power to censor his on-line speech" for the rest of his life. Appellant's Br. 21. We find that the condition does not warrant reversal under plain error review.

In cases involving prosecution for "sex crimes," which is defined to include Accardi's offense, the Sentencing Guidelines suggest computer restrictions can be "reasonably related" to the conduct underlying the offense. *See* U.S.S.G. § 5D1.3(d)(7) (2004). When faced with a substantially similar internet restriction, we noted that "[t]his circuit has yet to decide whether individuals convicted of sex crimes may have their Internet usage conditioned on Probation Office approval, and our sister circuits are divided on the issue." *Sullivan*, 451 F.3d at 895–96. Five years after deciding *Sullivan*, this Court still has yet to decide the issue, and disagreement among our sister circuits has continued. Some courts have upheld qualified internet bans where, as here, the defendant used a computer for distribution of child pornography. *See United States v. Boston,* 494 F.3d 660, 668 (8th Cir. 2007). *See also United States v. Bender,* 566 F.3d 748, 751–52 (8th Cir. 2009) (upholding a restriction on internet usage subject to permission from defendant's probation officer); *United States v. Thielemann,* 575 F.3d 265, 278 (3d Cir. 2009) (same); *United States v. Rearden,* 349 F.3d 608, 620–21 (9th Cir. 2003) (same); *United States v. Zinn,* 321 F.3d 1084, 1093 (11th Cir. 2003) (same). Others, however, have found that such conditions impose a greater restraint than was reasonably necessary. *See, e.g., United States v. Albertson,* 645 F.3d 191, 199 (3d Cir. 2011) (reversing internet restriction). In light of the circuit split on this issue and this Court's ongoing silence, the district court did not plainly err by imposing a qualified ban on Accardi's ability to access the internet.

Likewise, Accardi's challenge to the alcohol treatment requirement fails because of a lack of relevant precedent in this circuit and a split among the circuits that have evaluated similar conditions of supervised release. The district court ordered Accardi to "participate in and successfully complete a

residential and/or out-patient [alcohol] abuse treatment program . . . as approved and directed by the probation office." Accardi now claims the court improperly delegated the discretion to decide whether he will be subjected to a residential rehabilitation program, which implicates "significant liberty interests that the court may not delegate to a probation officer." Appellant's Br. 25.

Accardi's argument raises a question of first impression for this court which would be inappropriate to address under plain error review. Other circuits, however, have upheld similar conditions. *See United States v. Heckman*, 592 F.3d 400, 410 (3d Cir. 2010) (permissible for district court to impose mandatory treatment and to delegate choice of treatment program); *United States v. Cutler*, 259 F. App'x. 883, 887 (7th Cir. 2008) (same); *United States v. Allen*, 312 F.3d 512, 515–16 (1st Cir. 2002) (permissible to delegate to probation office "whether and for how long" defendant must participate in mental health treatment). *But see United States v. Mike*, 632 F.3d 686, 696 (10th Cir. 2011) ("any condition that affects a significant liberty interest, such as one requiring the defendant to participate in residential treatment, must be imposed by the district court"); *United States. v. Esparza,* 552 F.3d 1088, 1091 (9th Cir. 2009) (decision regarding whether treatment would be inpatient or outpatient could not be delegated to the probation office). A district court cannot "plainly" err on an issue that has so divided the circuits. *Sullivan,* 451 F.3d at 895–96.

IV

Finally, Accardi argues that his trial counsel was "ineffective for failing to object" to the three conditions he now challenges. To succeed on an ineffective assistance of counsel claim, the defendant must demonstrate both that his

counsel's performance fell below an objective standard of reasonableness and that this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688–92 (1984). When raised for the first time on appeal, this court's general practice is to remand the claim for an evidentiary hearing unless the trial record alone conclusively shows the defendant either is or is not entitled to relief. *United States v. Shabban*, 612 F.3d 693, 698 (D.C. Cir. 2010).

Accardi claims it was objectively unreasonable for counsel not to object to his sentence because the lengthy term of supervised release, coupled with the allegedly overbroad conditions of release, subjected him to "substantial deprivations of fundamental rights." Appellant's Br. 31. He further argues that counsel's failure to object prejudiced this appeal by forcing this court to review his sentence for plain error, rather than abuse of discretion. We disagree.

It is clear without the need for further factual development that counsel's decision not to object to the duration and conditions of supervised release reflected a strategic decision not to challenge the terms of supervised release in the hope of obtaining a shorter prison sentence. At the sentencing hearing, Accardi himself indicated his willingness to accept more restrictive terms of supervised release in exchange for a reduced prison sentence. In light of Accardi's explicit statement that he would "take lifetime supervised probation supervision," it would be somewhat perverse to find counsel constitutionally deficient for failing to object to the imposition of that very condition. Rather, the transcript of the sentencing hearing makes clear that counsel's failure to object reflected a reasonable strategic choice, which when "made after thorough investigation of law and facts relevant to plausible options [is] virtually unchallengeable." *Strickland*, 466 U.S. at 690.

14

V

For the foregoing reasons, the sentence imposed by the district court is hereby

*affirmed.*