Millett, Circuit Judge, concurring:
I write separately to put an exclamation on a point I have previously expressed: the constitutionally troubling use of acquitted conduct as the specific basis for increasing a defendant's prison sentence above the Sentencing Guidelines range. "In a constitutional system that relies upon the jury as the great bulwark of our civil and political liberties," allowing courts at sentencing "to materially increase the length of imprisonment" based on conduct for which the jury acquitted the defendant guts the role of the jury in preserving individual liberty and preventing oppression by the government. United States v. Bell , 808 F.3d 926, 929-930 (D.C. Cir. 2015) (Millett, J., concurring in the denial of rehearing en banc) (internal quotation marks, citations, and alterations omitted); see also id. at 928 (Kavanaugh, J., concurring in the denial of rehearing en banc).
Keith Matthews' sentence provides yet another living example of this problem. The government charged Matthews with twenty-two counts of serious criminal conduct, including assault, extortion, kidnapping, first-degree burglary while armed, and a mélange of other drug- and violence-related offenses. When Matthews pushed back by exercising his constitutional right to a jury trial, the government's indictment collapsed like a house of cards. The district court dismissed eight of the charges as so insubstantial that no rational juror could vote to convict. See FED. R. CRIM. P. 29(a) ; United States v. Boyd , 803 F.3d 690, 691-692 (D.C. Cir. 2015). For six others, the government surrendered without a fight, expressly declining even to present them to a jury. By the time Matthews' case reached the jury, his twenty-two counts had dwindled to eight.
For seven of those remaining eight charges, the government put on its best case. And it lost, hands down. The jury acquitted Matthews of every single tried charge except one: unlawful possession of firearm as a felon in violation of 18 U.S.C. § 922(g)(1). As our Constitution designed, the People-a jury of Matthews' peers-spoke loudly and clearly: the only criminal conduct for which the government could imprison Matthews was the unlawful possession of a single firearm.
Unfortunately for Matthews, circuit precedent allowed the government a second bite at the incarceration apple. The government acknowledged at sentencing that Matthews "was not convicted of" assaulting and burglarizing another Woodberry resident. But let's punish him anyhow, *409 the government urged, for exactly that acquitted conduct. Dkt. 402 at 11-12 ("We understand the jury's verdict, but we also understand that the Guidelines Range did not take into account the factual evidence that this man was involved[.]"). The government, it seems, did not understand what the jury meant when it said "not guilty."
To be sure, many considerations at criminal sentencing, like the defendant's background, criminal history, and other mitigating or aggravating factors, need only be proved by a preponderance of the evidence. But lumping acquitted conduct in with those traditional factors and then using that acquitted conduct to single a defendant out for distinctively severe punishment-an above-Guidelines sentence-renders the jury a sideshow. Without so much as a nod to the niceties of constitutional process, the government plows ahead incarcerating its citizens for lengthy terms of imprisonment without the inconvenience of having to convince jurors of facts beyond a reasonable doubt.
Incarceration without conviction is a constitutional anathema. Bell , 808 F.3d at 932 (Millett, J., concurring in the denial of rehearing en banc). Our constitutional system of government reposes ultimate power in the People of the United States to preserve and maintain liberty. The ultimate threat to liberty and rule of the People, by the People, and for the People is the power of the government to lock up and exercise complete control over its citizens. The genius of the Constitution's protections for criminal defendants was to prevent tyranny in that form by ensuring that an individual's liberty could only be stripped away by a jury of his peers upon proof of a crime beyond a reasonable doubt. In re Winship , 397 U.S. 358, 362, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding that these "rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions") (internal quotation marks omitted); id . at 363, 90 S.Ct. 1068 ("The [reasonable-doubt] standard provides concrete substance for the presumption of innocence-that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' "). Allowing the government to lock people up for a discrete and identifiable term of imprisonment for criminal charges rejected by a jury is a dagger pointed at the heart of the jury system and limited government.
I acknowledge that circuit precedent allows the government to engage in this acquitted-conduct alchemy. See United States v. Settles , 530 F.3d 920 (D.C. Cir. 2008). But I do not have to like it or stay silent about what is, in my view, a grave constitutional wrong.
Kavanaugh, Circuit Judge, dissenting in part:
The majority opinion vacates the sentences of defendants Adona and Matthews. I respectfully dissent on those two issues. I would dismiss Adona's appeal based on the appeal waiver in his plea agreement. I would affirm Matthews' sentence as procedurally and substantively reasonable.
I
Ira Adona pled guilty to conspiracy to distribute PCP. The written plea agreement included an appeal waiver. As relevant here, the appeal waiver provided that Adona could appeal his sentence only if his sentence was above the Guidelines range determined by the District Court. The appeal waiver stated quite clearly:
Your client agrees to waive the right to appeal the sentence in this case, including any term of imprisonment, fine, forfeiture, award of restitution, term of supervised *410 release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences your client above the statutory maximum or guidelines range determined by the Court, in which case your client would have the right to appeal the illegal sentence or above-guidelines sentence, but not to raise on appeal other issues regarding the sentencing.
J.A. 108 (emphasis added). Adona and his counsel both signed the plea agreement.
The District Court determined that Adona's Guidelines range spanned from 7 years and 3 months in prison to 9 years in prison. The District Court then sentenced Adona to 9 years in prison, within the Guidelines range .
The majority opinion acknowledges that Adona's sentence fell within the Guidelines range. In light of the plea agreement, our task therefore should be easy: Dismiss Adona's appeal. As this Court has explained: "An appeal waiver serves the important function of resolving a criminal case swiftly and finally," and we "ordinarily dismiss an appeal falling within the scope of such a waiver." United States v. Hunt , 843 F.3d 1022, 1027 (D.C. Cir. 2016).
But the majority opinion overrides the appeal waiver and reaches the merits of Adona's appeal. The majority opinion says that the District Court mischaracterized the appeal waiver during the plea colloquy. For that reason, the majority opinion concludes that Adona's appeal waiver was not "knowing, intelligent, and voluntary." In re Sealed Case , 702 F.3d 59, 63 (D.C. Cir. 2012).
What was the supposed mischaracterization?
The majority opinion says that the District Court told Adona during the plea colloquy that Adona could appeal any sentence based on "reasonableness." But the District Court never said that. The District Court stated: "Now, with regard to certain circumstances , you may even have an opportunity, the right to appeal the sentence of this court on the grounds of reasonableness." Docket No. 258 at 10 (Filed 6/18/15) (emphasis added). The District Court's statement was accurate. The "certain circumstances" language indicated that there were some circumstances in which Adona would be able to appeal his sentence and some circumstances in which he would not be able to appeal his sentence.
What were those "certain circumstances," as relevant here? The written plea agreement plainly stated that Adona could appeal an above-Guidelines sentence, but could not appeal a within-Guidelines or below-Guidelines sentence.
In short, there was no confusion or mischaracterization during the plea hearing. Indeed, after the District Court's colloquy with Adona, the District Court then asked the defense counsel to briefly describe the plea agreement's terms. The defense counsel stated correctly that Adona could appeal in a certain circumstance: if the District Court imposed a sentence above the Guidelines .
And I've advised Mr. Adona of what Your Honor said to him in open court prior to this, that Your Honor-I don't know-I guess the best way to describe it would be that Your Honor had not made up-made a final decision that you would consider the advisory guidelines, but your inclination was that that-the court would probably depart upward and would state the reasons for that.
I've explained to Mr. Adona, and I think Your Honor just went over briefly with him earlier, that under the plea agreement he retains the right to appeal that decision and-if Your Honor does do *411 that . And as I said, I will be advocating that you not do that. But you've advised Mr. Adona of what your thoughts were on that issue.
Id. at 14 (emphasis added). The District Court then asked Adona, "Does that sound consistent with your understanding" of the plea agreement? Id. at 14-15. Adona answered, "Yes, sir." Id. at 15. A few minutes later, the District Court stated again, "Now, you've heard your attorney's description of the plea agreement. That's consistent with yours, right?" Id. at 19. Adona replied, "Yes." Id.
To reiterate, there was no confusion or mischaracterization at the plea hearing.
Nor was there any confusion about the appeal waiver during the subsequent proceedings in the case. For example, the presentence report-which was prepared after the plea hearing and before sentencing-succinctly explained the appeal waiver: "The defendant may appeal an illegal sentence or above-guideline sentence but may not raise other issues on appeal." J.A. 546. Adona never suggested to the District Court that the presentence report's description of the appeal waiver was incorrect.
On this record, I find it untenable to claim that Adona and his counsel were somehow operating under any confusion or misunderstanding about the scope of the appeal waiver.
Enforcing the waiver as written would hardly be unfair. Keep in mind that Adona received many benefits from his plea deal. Adona was involved in a significant PCP distribution operation in which the gang members terrorized Woodberry Village residents and took over apartments in the neighborhood in order to store and deal PCP. On top of that, Adona shot a man named Karl Carrington in the back during a marijuana transaction. Given his drug distribution activities and his violent criminal activity, Adona received a reasonably good plea deal here, at least as compared to many other similarly situated defendants. In return, Adona gave up (among other things) his right to appeal a within-Guidelines sentence, which is what he ultimately received.
We should enforce the appeal waiver and dismiss Adona's appeal.
II
The majority opinion also vacates Keith Matthews' sentence. I also find that decision confounding.
A
Matthews was a member of the Woodberry Village drug distribution operation, and he ultimately was convicted of one offense: unlawful possession of a firearm by a felon. The advisory Guidelines range for Matthews spanned from 6 years and 6 months in prison to 8 years and 1 month in prison. The Government requested an above-Guidelines sentence of 10 years. Matthews requested a within-Guidelines sentence of 6 years and 6 months. The District Court varied upward from the Guidelines range, but not as much as the Government had requested. The District Court sentenced Matthews to a slightly above-Guidelines sentence of 9 years in prison.
Seizing on the Guidelines range as if it were talismanic (which it is not post- Booker ), the majority opinion concludes that the District Court committed procedural error by failing to adequately explain Matthews' above-Guidelines sentence. I disagree.
We review sentences for procedural and substantive reasonableness. For a sentence to be procedurally reasonable, a district court must, among other things, explain the sentence. For a sentence to be substantively *412 reasonable, a district court must impose a sentence that is not unreasonably short or long given all of the facts and circumstances of the offense and offender.
Under this Court's precedents on procedural reasonableness, a district court, in explaining an above-Guidelines sentence, must also "state the specific reason why the defendant's conduct was more harmful or egregious than the typical case represented by" the Guidelines range. United States v. Brown , 808 F.3d 865, 866-67 (D.C. Cir. 2015) (emphasis added); see also United States v. Akhigbe , 642 F.3d 1078, 1086 (D.C. Cir. 2011). A district court must supply "individualized reasoning as to why" a sentence "above the Guidelines range was appropriate for this particular defendant." Akhigbe , 642 F.3d at 1086.
Even putting aside whether Brown and Akhigbe over-emphasized the Guidelines range in reviewing the procedural adequacy of a district court's sentencing explanation, the District Court here fully met its procedural obligations, including under those precedents. Matthews' crime of conviction was unlawful possession of a firearm as a felon. In sentencing Matthews slightly above the advisory Guidelines range, the District Court explained at length why it was sentencing Matthews to 9 years in prison.
The District Court stated:
You're engaged here in a drug operation, and you were involved with, of course, others, Mr. Brown in particular, involved in drug dealing. And you had a lot of weapons on you. You were involved with a lot of weapons. And there certainly was enough evidence for me to see that you were involved in some related acts of violence involved here. So the Court's mindful of all of that.
And the Court's mindful that it is very important to deter you from engaging in any conduct of this kind in the future.
....
Of course, the Court also wants to deter others. There were young folks in that neighborhood, undoubtedly, who were aware of what you were doing and other folks with you, and maybe even looked to you or aspired to be like you. And we want to deter them from engaging in conduct of that kind, because that leads to more violence and more drug sales in the community.
And, of course, the Court needs to protect the community from that kind of conduct. We can't have people out selling drugs and running around with weapons, and, especially, weapons that can go off and-whether intentionally or accidentally, and hurt folks, whether they be little kids in an apartment or whether they be police officers trying to do their job across the street.
The Court also needs to promote respect for the law, respect not only for you to have for the law but for others to have for the law.
So for all of those reasons, a sentence at the high end of the guideline range, in my judgment, is not sufficient in this particular case for your sentence. Something more than that has to be done in order to deter you and others, protect the community, promote respect for the law, and, of course, give you a fair and adequate punishment under the circumstances.
So as a result of all of that, I've decided to vary upwards to 108 months. It's not the maximum but it's not the very top of the Guideline Range. And I'm doing it symbolically to make a point, that it's important that the people in the community, that you and others see that this kind of conduct has to stop, that you need to be deterred, they need to be deterred, and that the community, of *413 course, needs to respect the law, and you need to respect the law.
J.A. 487-89.
From the District Court's explanation and the record, we can identify at least five reasons why the District Court concluded that this was not an ordinary case and sentenced Matthews to 9 years in prison.
First , the District Court referenced the other "acts of violence" committed by Matthews. Id. at 488. Earlier in the hearing, the Government presented the evidence of those other acts of violence committed by Matthews: (i) firing "a firearm he had on his person multiple times in the area near the police to distract them"; (ii) firing a gun in Tiffany Williams' apartment while her eight-year-old son was present; and (iii) participating in the forcible takeover of Louis Clifton's home so that Matthews and the drug distribution operation could better conceal and organize their activities. Docket No. 402 at 9 (Filed 3/17/16). The District Court found that those acts of violence had been proved by a preponderance of the evidence. The District Court also concluded that those other acts were not the typical actions of an ordinary felon-in-possession defendant in this Guidelines range.
Second , the District Court concluded that Matthews posed a greater threat to public safety in his neighborhood than an ordinary felon in possession. Matthews and his colleagues used weapons to coerce neighbors into surrendering their homes.
Third , the District Court determined that Matthews' involvement in that neighborhood drug conspiracy made him an especially bad role model for youth in the community. This was not a case where the drug dealers kept to themselves at home and bought and sold drugs at some other locale. This gang took over Woodberry Village apartments and sold drugs inside of Woodberry Village where children were present. Therefore, the District Court was understandably concerned about the impact of those illegal activities on the young people in the community.
Fourth , the District Court stated that Matthews was "involved with a lot of weapons," not just the one weapon that he was convicted of possessing. J.A. 488. The evidence presented at trial amply supported that conclusion. Specifically, Matthews complained in a text message that police had confiscated several of his guns, and pictures recovered from his cell phone showed Matthews with multiple guns-illustrating why his nickname in the drug distribution operation was "Bang." Docket No. 402 at 14.
Fifth , the District Court stressed the importance of promoting public respect for the rule of law, especially in a community besieged by drugs and violence. Matthews did far more than just possess a firearm, and the District Court thought it important that the sentence reflect that reality.
Those combined considerations led the District Court to conclude that "a sentence at the high end of the guideline range" was "not sufficient." J.A. 489.
This was not your typical felon-in-possession case within this Guidelines range. The District Court thoroughly explained that point when sentencing Matthews. In explaining the sentence, the District Court readily satisfied its procedural obligations under the sentencing precedents of the Supreme Court and this Court.
B
What about substantive reasonableness? On appeal, Matthews does not advance a substantive unreasonableness argument. That was a sound decision on his part. It is important to understand why that is so.
*414 To begin with, we must keep in mind the critical distinction between procedural and substantive review of sentences. If a district court fails to explain why it imposed a particular sentence, that is procedural error. If a district court explains the sentence, but the district court's explanation (or to be precise, the facts and circumstances recounted in the district court's explanation) does not justify the length of the sentence, that is substantive error.
The appellate standard of review in sentencing cases is abuse of discretion. With respect to our substantive review, that abuse-of-discretion standard is especially deferential after Booker because there is no dispositive baseline or anchor to tell us what a proper sentence is for any given case. How short is too short? How long is too long? After Booker , the Guidelines are not the baseline or anchor because "the Guidelines are now advisory." Gall v. United States , 552 U.S. 38, 46, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). Therefore, the fact that the district court sentenced a defendant below, within, or above the Guidelines does not in and of itself suggest any unreasonableness in the sentence.
Take Gall as an example. The Supreme Court upheld a sentence of probation even though the Guidelines range was from 30 to 37 months of imprisonment. The Supreme Court explained that affording too much weight to the Guidelines range in the substantive review of sentences would create "an impermissible presumption of unreasonableness for sentences outside the Guidelines range" and "would not be consistent with Booker ." Id. at 47, 128 S.Ct. 586. The Supreme Court added that courts of appeals may not apply "a heightened standard of review to sentences outside the Guidelines range." Id. at 49, 128 S.Ct. 586.
In the wake of Booker and Gall , we have explained that the "substantive reasonableness inquiry that we must conduct on appeal boils down to the following question: In light of the facts and circumstances of the offense and offender, is the sentence so unreasonably high or unreasonably low as to constitute an abuse of discretion by the district court?" United States v. Gardellini , 545 F.3d 1089, 1093 (D.C. Cir. 2008). Given that the substantive standard for sentencing in the advisory Guidelines regime is not tied to the Guidelines, and given that our appellate standard of review of a district court's sentence is the deferential abuse-of-discretion standard, it "will be the unusual case when an appeals court can plausibly say that a sentence is so unreasonably high or low as to constitute an abuse of discretion by the district court." Id.
Turning back to this case, it is not plausible to say that the 9-year sentence for Matthews is substantively unreasonable given the facts and circumstances of the offense and offender described above. That no doubt is why Matthews himself does not advance such an argument.
C
Having said all of that, I can identify three concerns one might have about the sentence in this case. But all three concerns are policy-based and, under the relevant Supreme Court precedents, do not qualify as legal grounds for vacating the sentence.
First , one may think that the top of the Guidelines range should represent the upper limit for a sentence, at least absent extraordinary circumstances. But the problem with that position comes back to Booker and Gall . Under those cases, a district court does not need some special justification to impose an above-Guidelines sentence (or a below-Guidelines sentence, for that matter). Put another way, the *415 special justifications needed for departures under the old mandatory Guidelines regime are not needed for variances under the current advisory Guidelines regime. The Supreme Court has emphasized that "the Guidelines are now advisory ." Gall , 552 U.S. at 46, 128 S.Ct. 586 (emphasis added). Advisory means advisory.
Second , one may be concerned about the District Court's reliance on acquitted conduct when sentencing Matthews. Cf. United States v. Bell , 808 F.3d 926, 927-28 (D.C. Cir. 2015) (Kavanaugh, J., concurring in denial of rehearing en banc); id. at 928-32 (Millett, J., concurring in denial of rehearing en banc). Matthews was acquitted on all counts except for the one felon-in-possession charge, but he was then sentenced in essence as if he had been convicted on all of the counts. Defendants are understandably unhappy (to say the least) when that occurs. But that result is the not-uncommon byproduct of our current federal sentencing regime in which the jury assesses guilt under a reasonable doubt standard, while the district court then may find sentencing facts under a lesser preponderance of the evidence standard. See United States v. Settles , 530 F.3d 920, 923 (D.C. Cir. 2008).
In that bifurcated system, a district court may find that the defendant engaged in certain conduct even though the jury acquitted the defendant of engaging in that same conduct. If that system seems unsound-and there are good reasons to be concerned about the use of acquitted conduct at sentencing, both as a matter of appearance and as a matter of fairness-Congress and the Supreme Court may fix it, as may individual district judges in individual cases. See id. at 924 ; see also Bell , 808 F.3d at 927-28 (Kavanaugh, J., concurring in denial of rehearing en banc); United States v. Henry , 472 F.3d 910, 918-22 (D.C. Cir. 2007) (Kavanaugh, J., concurring). But under current law, the district court may base the sentence in part on facts found at the sentencing hearing by a preponderance of the evidence.
Third , one may think that Matthews' 9-year sentence is simply too long given the facts in this case as found and recounted by the District Court. But the problem with reaching such a conclusion is our deferential substantive standard of review: abuse of discretion. In light of that deference, it is not remotely plausible to say that the 9-year sentence in this case is too long. See Gall , 552 U.S. at 47, 128 S.Ct. 586. Indeed, even Matthews does not argue as much.
In short, those three policy-based concerns supply no legal justification for vacating the sentence.
D
Because the District Court fully explained the sentence, thus satisfying its procedural obligations, and because the 9-year sentence was substantively reasonable, Matthews' case should be an easy affirmance.
Why, then, does the majority opinion vacate Matthews' sentence?
The majority opinion says that the District Court committed procedural error by not adequately explaining Matthews' sentence. That conclusion is not tenable, in my view. As described above, the District Court fully explained its decision and met its procedural obligations.
The majority opinion apparently is not persuaded by the District Court's explanation. But the persuasiveness of the District Court's explanation is not a procedural issue. It is a substantive issue-and therefore is not a proper basis for vacating the sentence in this case, where Matthews did not (and could not plausibly) raise a substantive unreasonableness argument.
*416 In any event, because the majority opinion nominally classifies this case as one of procedural error, and does not claim that the above-Guidelines 9-year sentence was substantively unreasonable under the facts and circumstances here, the District Court on remand may simply re-impose the same 9-year sentence. All the District Court needs to say is that it believes, as a policy matter, that the Guidelines range is too low for Matthews' offense. See Kimbrough v. United States , 552 U.S. 85, 101-02, 109, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007). Or in the alternative, the District Court can further explain (really, re-explain) why the facts and circumstances of Matthews' offense justify a 9-year sentence. Unless and until this Court says that a 9-year sentence for Matthews is substantively unreasonable, the District Court need not change its prior sentence.
* * *
We should dismiss Adona's appeal and affirm Matthews' sentence. I respectfully dissent on those two issues.