# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 9, 2010   Decided January 7, 2011

No. 10-3012

UNITED STATES OF AMERICA,
APPELLEE

v.

LENIN MARKS ERAZO,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00083)

*H. Heather Shaner*, appointed by the court, argued the cause for the appellant.

Jay Apperson, Assistant U.S. Attorney, argued the cause for the appellee. *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *John P. Mannarino* and *Katherine M. Kelly*, Assistant U.S. Attorneys, were on brief. *Roy W. McLeese III*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellant Lenin Erazo (Erazo) pleaded guilty to one count of unlawful distribution of 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(ii). The district court sentenced him to sixty-four months' incarceration followed by forty-eight months' supervised release, along with a special assessment of $100 and an order to comply with deportation directives. On appeal, Erazo argues that the district court erred in finding him ineligible for sentencing under the "safety valve" provision set forth in section 5C1.2 of the United States Sentencing Guidelines (Guidelines or U.S.S.G.). We affirm the district court as explained below.

I.

On March 6, 2008, Erazo arranged by telephone to sell two kilograms of powder cocaine to a confidential informant (CI) working for the District of Columbia Metropolitan Police Department.[1] Shortly after 7 p.m. Erazo and two co-defendants, Alcides Guerra-Bautista and Juan Portillo, arrived at a parking lot in Northeast Washington, D.C. to meet with the putative buyers—the CI and an undercover police detective. Erazo drove himself in a Toyota Corolla. His confederates, Bautista and Portillo, arrived separately in a black Ford pickup truck. The CI and detective had already arrived in an undercover police van equipped with audio and video equipment. Erazo then stepped out of his vehicle, approached the undercover police van and sat down in the front passenger seat next to the detective. Inside the van, Erazo discussed the cocaine with the detective, telling him in Spanish, "Yes, the drugs are good, the drugs are good." After

---

[1] The background facts are taken from Erazo and Portillo's plea hearing held on August 21, 2008 and Erazo's subsequent sentencing hearing on September 15, 2009.

a short conversation, Erazo called out in Spanish, "Bring the [stuff]." Bautista and Portillo were still sitting in the pickup truck and, on hearing Erazo's command, Bautista withdrew a bag of cocaine from the rear of the truck and took it over to the van. Portillo accompanied him. Erazo took the bag and Bautista and Portillo sat down in the van's back seat. Erazo told the detective that he was unable to transport the cocaine himself because he did not have a driver's license.

Erazo and the undercover detective consummated the transaction once all three co-defendants were inside the van, with Erazo handing over about 1.5 kilograms of cocaine to the detective. The CI gave cash to Erazo, telling him that it was $8000. The detective then said he had to retrieve the rest of the money and exited the van. At that moment, a police team converged on the vehicle and placed all three co-defendants under arrest.

When the police searched Portillo incident to his arrest, they discovered a Raven Arms .25 caliber pistol around the cuff of his pants. Portillo later testified that he had been carrying the weapon tucked into his waistband and "when the police threw themselves on me" it fell down his pants-leg. The pistol was loaded with five rounds of ammunition. Police also recovered a napkin containing thirty-one rounds of .25 caliber ammunition and a black scale from the back seat of the van where Portillo and Bautista had been sitting.

Erazo pleaded guilty to one count of distribution of 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(ii), and agreed to a two-level sentence enhancement for possession of a dangerous weapon pursuant to

section 2D1.1(b)(1) of the Guidelines.[2] Erazo argued, however, that he was eligible for the "safety valve" provision of the Guidelines, which requires that a defendant be sentenced "without regard to any statutory minimum sentence" if he meets certain enumerated criteria. U.S.S.G. § 5C1.2(a); 18 U.S.C. § 3553(f). In particular, Erazo argued that he could establish under subpart (a)(2) of the safety valve provision that he did "not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." U.S.S.G. § 5C1.2(a)(2). The district court held an evidentiary hearing to determine whether Erazo was eligible for the safety valve. The Government called Portillo to testify about how he came into possession of the pistol that the police found on him at the March 6, 2008 drug deal.

Portillo testified that, before his arrest, he had been staying at a friend's two-bedroom apartment in nearby Maryland, sleeping on the floor of one of the bedrooms. It was there that

---

[2]Section 2D1.1(b)(1) provides in pertinent part for a two-level enhancement in base offense level "[i]f a dangerous weapon (including a firearm) was possessed." This circuit has not yet decided whether imposition of an enhancement under section 2D1.1(b)(1) automatically disqualifies a defendant from being eligible for the safety valve. *See United States v. Plunkett*, 125 F.3d 873, 876 n.6 (D.C. Cir. 1997), *cert. denied*, 118 S. Ct. 895 (1998). Several other circuits have held that sections 2D1.1(b)(1) and 5C1.2 need not be mutually exclusive. *See, e.g.*, *United States v. Anderson*, 452 F.3d 87, 90-92 (1st Cir. 2006); *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1187-88 (10th Cir. 2004); *United States v. Bolka*, 355 F.3d 909, 914 (6th Cir. 2004); *United States v. Nelson*, 222 F.3d 545, 549-51 (9th Cir. 2000). We do not reach the question here because it is unnecessary to our disposition.

Portillo met Erazo, who was living in the other bedroom. On March 6, 2008 Portillo was in the apartment with Bautista, a friend from Guatemala, when Bautista received a telephone call from Erazo. Erazo asked to speak to Portillo. Once Portillo came on the line, Erazo asked him for a "favor": to get a gun out of Erazo's bedroom and bring it to him. According to Erazo, the gun was under Erazo's bed. Portillo found the gun under Erazo's bed and shortly thereafter, with the pistol in his waistband, accompanied Bautista in the pickup truck to the meeting with Erazo and his buyers.

According to Portillo, however, he was duped into becoming an unwitting participant in the drug deal. As Portillo recounted, Erazo lied about the reason he asked Portillo to retrieve his gun, saying that he had arranged to sell the pistol together with his own car and needed a ride home. Portillo also disputed the sequence of events in the Government's factual proffer. Portillo testified that he did not hear Erazo yell, "Bring the [stuff]." Instead, Portillo was in the pickup truck having a telephone conversation with his girlfriend when the CI approached the truck and motioned for Bautista and Portillo to join them in the van.

## II.

The sole issue on appeal is whether the district court erred in finding Erazo ineligible for safety valve relief under section 5C1.2 of the Guidelines. We review the district court's sentencing decision under the three-part scheme established by 18 U.S.C. § 3742(e). " 'Purely legal questions are reviewed *de novo*; factual findings are to be affirmed unless "clearly erroneous"; and we are to give "due deference" to the district court's application of the guidelines to facts.' " *United States v. Day*, 524 F.3d 1361, 1367 (D.C. Cir. 2008) (quoting *United*

*States v. Goodwin*, 317 F.3d 293, 297 (D.C. Cir. 2003)), *cert. denied*, 129 S. Ct. 295 (2008).

The facts plainly manifest that Erazo "induce[d] another participant"—namely, Portillo—to "possess a firearm . . . in connection with the offense." U.S.S.G. § 5C1.2(a)(2). Portillo's testimony vividly illustrates the extent to which Erazo directed Portillo's actions. As a "favor" to Erazo, a man he had met just a few days before, Portillo retrieved from Erazo's bedroom a gun hidden under the bed as Erazo had told him and then took the gun to a location Erazo specified. Moreover, Portillo's testimony demonstrates that his possession of the firearm was "in connection with" the offense. Under section 5C1.2, the firearm need only "facilitate, or have the potential of facilitating, the drug trafficking offense." *United States v. DeJesus*, 219 F.3d 117, 122 (2d Cir. 2000) (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)), *cert. denied*, 531 U.S. 1001 (2000). We have held, in construing a similar provision in 18 U.S.C. § 924(c)(1)—which imposes criminal liability for "us[ing] or carr[ying] a firearm" "during and in relation to any crime of violence or drug trafficking crime"—that the requisite connection with the underlying offense is established if the weapon was used or carried "in order to protect contraband." *United States v. Evans*, 888 F.2d 891, 896 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1019 (1990); *see also United States v. Condren*, 18 F.3d 1190, 1199-1200 (5th Cir. 1994) (finding that firearm was used or possessed "in connection with" offense within meaning of U.S.S.G. § 2K2.1(b)(5) where loaded weapon was found near cache of drugs and drug paraphernalia and "was readily available . . . to protect [the defendant's] drug-related activities"), *cert. denied*, 513 U.S. 856 (1994). Here, it is sufficient to establish Erazo's ineligibility for the safety valve provision that Portillo carried a loaded pistol in the same vehicle used to transport the cocaine to the site of the illegal transaction

at Erazo's request, and when Erazo was planning a drug deal at the site, and that Portillo had the pistol inside the van at the moment the drugs and money changed hands.

Erazo contends, however, that the district court erred by crediting the portion of Portillo's testimony in which he described Erazo's instructions regarding the gun but refusing to credit Portillo's claims that he was unaware of the true reason for carrying the weapon. We have held, however, that a district court's credibility determinations are entitled to " 'the greatest deference,' " *United States v. Hart*, 324 F.3d 740, 747 (D.C. Cir. 2003) (quoting *Carter v. Bennett*, 840 F.2d 63, 67 (D.C. Cir. 1988)), and the court is always free to credit some portions of testimony while disregarding others. *See Garvey Marine, Inc. v. NLRB*, 245 F.3d 819, 825 (D.C. Cir. 2001) ("The trier of fact is surely entitled . . . to credit some but not all of a witness's testimony . . . ."). Indeed, the district court here parsed Portillo's testimony with evident care, finding "some of these portions—what's the word—were incredible," but crediting other portions—in particular, the answers that Portillo gave to questions posed directly by the court. Sentencing Tr. at 33, 36, *United States v. Erazo*, No. 08-083 (D.D.C. Jan. 6, 2010). The district judge explained that "the Court did have the opportunity to look [Portillo] in the eye and ask him questions, focus his attention and to receive from Mr. Portillo what the Court believes was truthful testimony." *Id.* at 36. We cannot say that the district court's findings were clearly erroneous.

Erazo also likens his appeal to *In re Sealed Case*, in which we found a defendant eligible for the safety valve provision even though his co-conspirator in an illegal narcotics transaction possessed a firearm in connection with the offense. 105 F.3d 1460, 1462-65 (D.C. Cir. 1997). The defendant had waited inside a restaurant while his co-conspirator carried out the transaction in a nearby parked car, keeping a revolver hidden

beneath the driver's seat. *Id.* at 1461. Although the defendant was aware of the gun in the nearby car, he was never in physical proximity to it nor was there any other "additional evidence linking the participant to the weapon" to support his constructive possession. *Id.* at 1463-65. Merely to recite the facts from *In re Sealed Case*, however, is to distinguish that case from the events here. Portillo had the gun in the van where the deal took place, thus putting it in proximity to Erazo. Moreover, unlike the defendant in *In re Sealed Case* who had never even held the gun that was found in his co-conspirator's car, *id.* at 1465 ("And nothing in the record establishes that appellant had ever held the gun . . . ."), it was Erazo who owned the pistol and stored it underneath his bed and Erazo who directed Portillo to retrieve the pistol and carry it to the scene of a drug deal. A more apt comparison is the Eighth Circuit case, *United States v. Denis*, in which the defendant set up a deal with undercover law enforcement officers to exchange a few ounces of cocaine base for a machine gun and then dispatched two associates in his stead to make the trade. 560 F.3d 872, 872-73 (8th Cir. 2009), *cert. denied*, 130 S. Ct. 314 (2009). The Eighth Circuit held that the defendant had "induced" another participant to possess the machine gun and thus was ineligible for the safety valve. *Id.* at 873-74. Just so here.

For the foregoing reasons, Erazo's sentence is affirmed.

*So ordered.*