# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 16, 2020                Decided: April 27, 2021

No. 19-3051

UNITED STATES OF AMERICA,
APPELLEE

v.

ANTONIO MORENO-MEMBACHE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cr-00134-5)

———

*Carmen D. Hernandez*, appointed by the court, argued the cause for appellant. With her on the briefs was *Richard K. Gilbert*, appointed by the court.

*James I. Pearce*, Attorney, U.S. Department of Justice, argued the cause and filed the brief for appellee. *John M. Pellettieri*, Attorney, entered an appearance.

Before: TATEL, MILLETT, and KATSAS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MILLETT.

Dissenting opinion filed by *Circuit Judge* KATSAS.

MILLETT, *Circuit Judge*: Plea agreements are at once ordinary and extraordinary. Ordinary because they resolve nearly 98% of criminal cases in the federal system every year.[1] And extraordinary because of what they entail for individual defendants. A guilty plea is not only the defendant's admission in open court that he committed a crime, but also a "grave and solemn act" through which the defendant waives a panoply of constitutional rights, including his rights to a jury trial and to put the government to its heavy burden of proof. *See Brady v. United States*, 397 U.S. 742, 748 (1970). Because of the vital interests at stake, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

In this case, Antonio Moreno-Membache entered a guilty plea on the understanding that the government would not argue that he was ineligible for a sentence reduction because of his alleged supervisory or managerial role in a drug-smuggling conspiracy. That promise would eliminate a statutory barrier to Moreno-Membache seeking relief under the Safety Valve provision of the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(f)(4), from his mandatory minimum sentence.

The government understood its promise differently, arguing that it retained the ability to oppose any Safety Valve relief and characterizing the relevant language in the plea

---

[1] *See Federal Judicial Caseload Statistics, Table D-4*, U.S. COURTS (2020), https://www.uscourts.gov/statistics/table/d-4/federal-judicial-caseload-statistics/2020/03/31 (last accessed April 26, 2021).

agreement as "inelegant[]" and "unnecessary." Oral Arg. Tr. 17:1–3, 21:8–9.

The question before this court is whether the language of the plea agreement is ambiguous because the law demands clarity when constitutional rights are waived. We hold that the plea agreement is ambiguous as to the government's ability to oppose Safety Valve relief on the ground that Moreno-Membache was a supervisor or manager in a drug conspiracy. Controlling precedent requires that the ambiguity be resolved in favor of the defendant. For that reason, we vacate Moreno-Membache's sentence and remand for a new sentencing proceeding, untainted and uninfluenced by the government's breach of the plea agreement and the evidence it introduced in the process.

**I**

**A**

In June 2012, the United States Coast Guard surveilled the *Mistby*, a so-called "go-fast" boat, off the coast of Panama.[2] When the Coast Guard approached, the *Mistby* fled. As the Coast Guard pursued the boat, the *Mistby*'s crew began dumping cargo overboard. To no avail. The Coast Guard soon interdicted the *Mistby* and retrieved the discarded cargo, which amounted to more than 220 kilograms of cocaine and more than 235 kilograms of marijuana.

Moreno-Membache was not a member of the *Mistby*'s crew, nor was he present when the ship was stopped. *See*

---

[2] A "go-fast" boat is "a type of boat that can travel at high rates of speed and thus is considered a favored vehicle for drug smuggling operations." *United States v. Tinoco*, 304 F.3d 1088, 1117 (11th Cir. 2002).

*United States v. Mosquera-Murillo*, 902 F.3d 285, 287–288 (D.C. Cir. 2018). Instead, he was arrested and extradited to the United States after a joint investigation of the Colombian and United States governments concluded that he was involved in the conspiracy that ultimately resulted in the *Mistby*'s failed journey. *Id.*

In January 2016, Moreno-Membache pled guilty to conspiracy to "knowingly and intentionally distribute, and possess with intent to distribute * * * on board a vessel subject to the jurisdiction of the United States" both (i) five kilograms or more of cocaine, and (ii) 100 kilograms or more of marijuana. J.A. 130 ¶ 1. The charge was a violation of the Maritime Drug Law Enforcement Act ("Maritime Drug Act"), 46 U.S.C. §§ 70503, 70506(b), and the Controlled Substances Import and Export Act, 21 U.S.C. § 960(b)(1)(B), (b)(2)(G).

Under the Maritime Drug Act, the conspiracy charge to which Moreno-Membache pled carries a mandatory minimum sentence of ten years in prison. 46 U.S.C. § 70506(a) (stating that violators of the Maritime Drug Act shall be punished as provided in 21 U.S.C. § 960(b)); *see* 21 U.S.C. § 960(b)(1)(B), (b)(2)(G) (providing for ten-year mandatory minimum).

A separate statutory provision, known as the Safety Valve, allows district courts to approve sentences below a mandatory minimum in certain circumstances. Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 212(a), 98 Stat. 1987, 1989–1990 (codified at 18 U.S.C. § 3553(f)). Specifically, the Safety Valve provision sets out five eligibility criteria for obtaining relief. 18 U.S.C. § 3553(f). The offense (i) must not have resulted in death or serious bodily injury to any person, and the defendant (ii) must not have a significant criminal history, (iii) must not have used or threatened violence or possessed a firearm or other dangerous weapon in connection with the

offense, (iv) must not be "an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines," and (v) must truthfully provide all relevant information and evidence concerning the offense to the government. 18 U.S.C. § 3553(f)(1)–(5).

Also relevant to this appeal, Moreno-Membache's plea agreement was a "C-Plea." Referencing Federal Rule of Criminal Procedure 11(c)(1)(C), a "C-Plea" is one that makes the government's recommended sentence "binding on the court 'once the court accepts the plea agreement[.]'" *Freeman v. United States*, 564 U.S. 522, 529 (2011) (quoting FED. R. CRIM. P. 11(c)(1)(C)); *accord United States v. Goodall*, 236 F.3d 700, 703 (D.C. Cir. 2001). A C-Plea presents the district court with a take-it-or-leave-it proposition: The court must either accept or reject the plea; it may not modify the plea's terms, including the proposed sentence. *See Goodall*, 236 F.3d at 703 (citing *United States v. Cunavelis*, 969 F.2d 1419, 1422 (2d Cir. 1992)).

Under the C-Plea, the government and Moreno-Membache agreed to a sentence of 120 months (the mandatory minimum sentence), unless the district court determined that Moreno-Membache was eligible for relief under the Safety Valve provision. J.A. 131 ¶ 7. So the district court could either accept the 120-month sentence or find that Moreno-Membache deserved a lesser sentence under the Safety Valve provision. But the district court could not impose a longer sentence.

Under the plea agreement, Moreno-Membache expressly preserved his ability to seek relief from his mandatory minimum sentence under the Safety Valve provision. J.A. 132 ¶ 9; *see also* J.A. 132 ¶¶ 6, 7. And the government preserved its right to argue both that (i) the Safety Valve provision is categorically inapplicable to Moreno-Membache's conviction

under the Maritime Drug Act, and (ii) Moreno-Membache does not meet the Safety Valve eligibility criteria. J.A. 132 ¶ 9.

In the same paragraph of the plea agreement in which the government preserved its Safety Valve arguments, the government also surrendered its ability "to seek any of the adjustments set out in U.S.S.G. Chapter 3, Part B." J.A. 132 ¶ 9. That part of the Sentencing Guidelines includes, as relevant here, sentencing enhancements for a defendant's aggravating role in the offense. U.S. SENTENCING GUIDELINES MANUAL § 3B1.2 (U.S. SENTENCING COMM'N 2004) ("U.S.S.G."). A defendant plays an "aggravating role" when he acts as an organizer, leader, manager, or supervisor in the criminal operation. *Id.*

**B**

The district court initially ruled that the Safety Valve provision had no application to the Maritime Drug Act crimes to which Moreno-Membache had pleaded guilty. *See United States v. Mosquera-Murillo*, 172 F. Supp. 3d 24, 38 (D.D.C. 2016). This court reversed, holding that the Safety Valve was available for such offenses. *Mosquera-Murillo*, 902 F.3d at 296.

On remand, the district court turned to Moreno-Membache's request for relief under the Safety Valve provision. *United States v. Mosquera-Murillo*, No. 13-cr-00134-BAH, 2018 WL 6267765, at *1 (D.D.C. Nov. 30, 2018). Turning to the five statutory criteria for relief, the district court concluded as to the first and third criteria that Moreno-Membache had no serious criminal history and that the crime did not result in serious injury or death to any person. *Id.* at *5. The district court also declined to address the fifth criterion, which is whether Moreno-Membache fully shared all relevant information about his criminal activities with the government.

*Id.* So the district court's analysis of Moreno-Membache's eligibility for relief under the Safety Valve provision turned on the two remaining criteria: whether Moreno-Membache performed some leadership or supervisory role in the offense "as determined under the sentencing guidelines," and whether he possessed a weapon in conjunction with the crime, 18 U.S.C. § 3553(f)(2) & (4).

With respect to acting as a leader or supervisor, Moreno-Membache contended that the government expressly surrendered its right to argue that he had served such a role when it "agree[d] not to seek any of the adjustments set out in U.S.S.G. Chapter 3, Part B[,]" J.A. 132 ¶ 9, which necessarily included arguing that he served as an organizer, leader, manager, or supervisor in the conspiracy, *see* U.S.S.G. § 3B1.1 cmt. n.2; Joint Status Report at 4–5, 7–8, *Mosquera-Murillo*, No. 13-cr-00134-BAH (D.D.C. Nov. 19, 2018), ECF No. 271. The government disagreed and would present evidence that Moreno-Membache was ineligible for relief under the Safety Valve provision because of his alleged supervisory or managerial role in the offense. Joint Status Report at 6, *Mosquera-Murillo*, No. 13-cr-00134-BAH (D.D.C. Nov. 19, 2018), ECF No. 271.

The district court ruled that the plea agreement preserved the government's ability to argue that Moreno-Membache was ineligible for Safety Valve relief because of his supervisory or managerial role. The district court reasoned that, in the plea agreement, the government waived only its right to seek an increase in Moreno-Membache's guideline sentence because of his alleged leadership status. The district court also pointed to other provisions of the plea agreement that allowed the government to "inform the Court and the Probation Office" of facts relevant to sentencing, J.A. 132 ¶ 8, and to "dispute

sentencing factors or facts material to sentencing," J.A. 133 ¶ 12.

After conducting an evidentiary hearing, the district court found that Moreno-Membache was a supervisor or manager of crew members involved in the offense. *United States v. Mosquera-Murillo*, No. 13-cr-00134-BAH, 2019 WL 3037533, at *12–15 (D.D.C. July 11, 2019).

With respect to the other Safety Valve criterion pertaining to the use of a firearm in conjunction with the offense, the district court credited a law enforcement agent's description of two cooperating co-conspirators' claims that Moreno-Membache possessed a firearm. The captain of the *Mistby* reportedly said that he saw Moreno-Membache with a firearm at a planning meeting. *Mosquera-Murillo*, 2019 WL 3037533, at *15. And a "streetwise" crewmember reportedly said that he saw what appeared to him to be the outline of a firearm in Moreno-Membache's waistband, but he did not see the firearm itself. *Id.*

Based on its findings as to Moreno-Membache's supervisory or managerial status and possession of a firearm in conjunction with the crimes, the district court ruled that Moreno-Membache was ineligible for relief from the Maritime Drug Act's mandatory minimum sentence under the Safety Valve provision. The court then sentenced Moreno-Membache to the mandatory minimum of 120 months in prison. Moreno-Membache filed a timely notice of appeal.

**II**

The district court had jurisdiction to hear this case under 18 U.S.C. § 3231, which gives the district courts of the United States original jurisdiction over "all offenses against the laws of the United States." This court has jurisdiction to hear the

appeal of the final judgment in this case under 28 U.S.C. § 1291.

To determine whether a party has breached the terms of a plea agreement, we generally apply principles of contract law. *United States v. Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014); *United States v. Jones*, 58 F.3d 688, 692 (D.C. Cir. 1995). We interpret the terms of the plea agreement *de novo*. *Henry*, 758 F.3d at 431. Consistent with constitutional principles and the settled rule that contracts are construed against their drafters, we construe any ambiguities in the plea agreement against the government. *In re Sealed Case*, 702 F.3d 59, 65 (D.C. Cir. 2012).

## III

## A

## 1

At the heart of this case is the ninth paragraph of Moreno-Membache's plea agreement. That paragraph reads, in relevant part:

> The government *agrees not to seek any of the adjustments set out in U.S.S.G. Chapter 3, Part B*. The Defendant is permitted to request relief under Safety Valve provisions, and the Government is permitted to argue that the Safety Valve provisions do not apply to the maritime offense to which the Defendant has agreed to plead guilty and that, in any event, the Defendant does not meet the criteria to qualify for Safety Valve relief.

J.A. 132 ¶ 9 (emphasis added).

The question is whether the government's express agreement not to seek any adjustment under Chapter 3, Part B of the Sentencing Guidelines—including arguing that Moreno-Membache qualified for a supervisory or managerial role enhancement—foreclosed it from nevertheless arguing that Moreno-Membache was ineligible for Safety Valve relief because he was a supervisor or manager "as determined under the sentencing guidelines," 18 U.S.C. § 3553(f)(4).

Under settled precedent, ambiguity in the meaning of a plea agreement must be resolved against the government. *Henry*, 758 F.3d at 431; *Jones*, 58 F.3d at 691. Here, the scope of the government's waiver of its right to argue that Moreno-Membache had a supervisory or managerial role in the offense is, at a minimum, ambiguous, and Moreno-Membache reasonably read the plea agreement as foreclosing the government's opposition to his eligibility for Safety Valve relief on that basis.

To start with, the statutory Safety Valve criterion regarding supervisory and managerial roles expressly references the sentencing guidelines. *See* 18 U.S.C. § 3553(f)(4). And Section 5C1.2 of the Sentencing Guidelines, which specifically implements the Safety Valve criterion in Section 3553(f)(4), provides that a criminal defendant is disqualified from Safety Valve relief only if he "*receives* an adjustment for an aggravating role under § 3B1.1." U.S.S.G. § 5C1.2 cmt. n.5 (emphasis added). In other words, the Safety Valve criterion only seems to proscribe relief for those who are actually given an "organizer, leader, manager, or supervisor" adjustment under the Sentencing Guidelines. That is what the government under Paragraph Nine expressly surrendered by forgoing its ability to argue that Moreno-Membache should "receive[]" a supervisory adjustment under Section 3B1.1.

And Moreno-Membache in fact never "receive[d]" any such adjustment under the Sentencing Guidelines.

Because the government's ability to oppose Moreno-Membache's eligibility for Safety Valve relief on the grounds of his supervisory or managerial status textually hinged on that status actually being "determined" under the Sentencing Guidelines and Moreno-Membache actually "receiv[ing]" such an adjustment, the plea agreement, at the very least, can reasonably be read to foreclose the government from pursuing such an argument at sentencing.[3]

Reinforcing our conclusion, the government candidly acknowledged at oral argument that Paragraph Nine was "inelegantly drafted." Oral Arg. Tr. 21:8–9. Which seems to be a deft way of admitting that the agreement was unclear. Because Moreno-Membache reasonably read that inelegant phrasing as foreclosing the government from arguing his ineligibility for Safety Valve relief based on his asserted supervisory or managerial status, that is the reading we must give the agreement's text.

The government's only counter is to read Paragraph Nine as simply promising that it would not seek any additional adjustments to Moreno-Membache's sentence. That cannot be. Remember, Moreno-Membache's plea agreement was a "C-Plea" that, by its very terms, already precluded the government from seeking any additional adjustments or enhancements to Moreno-Membache's sentence. *See, e.g.*, *Freeman*, 564 U.S.

---

[3] To be clear, whether a criminal defendant must actually receive an aggravating role adjustment under the Sentencing Guidelines to be ineligible for Safety Valve relief is not the question in this case. The only question is whether Moreno-Membache reasonably read the plea agreement that way, in light of Paragraph Nine and the incorporated Sentencing Guidelines provision. He did.

at 529 (quoting FED. R. CRIM. P. 11(c)(1)(C)). So there was no reason for the plea agreement to include language prohibiting the government from seeking an adjustment under Chapter 3, Part B of the Sentencing Guidelines other than to preclude the government's opposition to Safety Valve relief on the basis of an asserted supervisory or managerial role.

In other words, the language of the plea agreement either meant something under Moreno-Membache's reading or meant nothing under the government's. We are loath to assume that a defendant surrendered a panoply of constitutional rights in exchange for a meaningless and valueless promise. *See* 11 WILLISTON ON CONTRACTS § 32:5 (4th ed. Supp. Nov. 2020) ("An interpretation which gives effect to all provisions in the contract is preferred to one which renders part of the writing superfluous, useless, or inexplicable."); *cf. United States v. Franco-Lopez*, 312 F.3d 984, 991 (9th Cir. 2002) ("[W]e prefer a contractual interpretation that gives some effect to the government's apparent promises contained in the agreement[.]"). At a minimum, whether the government's promise was meaningful or meaningless is textually ambiguous.

**2**

Of course, Paragraph Nine's language cannot be read in isolation. Because a plea agreement is a contract, it must be read as a whole. *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008) (Plea agreements "must be interpreted as a whole and no part should be ignored.") (quoting CALAMARI & PERILLO, CONTRACTS §3.13 (5th ed. 2003)); *see also* 11 WILLISTON ON CONTRACTS §32:5 (4th ed. Supp. Nov. 2020). In that regard, the district court pointed to two other provisions in the agreement that, in its view, preserved the government's ability to oppose Safety Valve relief on the basis of Moreno-

Membache's asserted supervisory or managerial status. Neither provision resolves, nor even addresses, the relevant ambiguity.

The district court pointed to Paragraphs Eight and Twelve of the agreement, both of which preserved the government's ability to advise the court of "facts pertinent to the sentencing process," J.A. 132 ¶ 8, and "facts material to sentencing," J.A. 133 ¶ 12. But those provisions are more naturally read as allowing the government to introduce evidence bearing on those other sentencing and Safety Valve factors not expressly waived in Paragraph Nine. That, in fact, is exactly what the government has done in arguing that Moreno-Membache is ineligible for the Safety Valve because of his possession of a firearm to facilitate the offense.

The district court offered a second rationale for finding that the plea agreement was unambiguous. It reasoned that the Sentencing Guidelines commentary defining an "organizer, leader, manager, or supervisor" as a person "who receive[d] an adjustment for an aggravating role" does not limit the court's ability to determine Safety Valve eligibility because the court, "not the government, makes the final determination of the applicability of such a role enhancement." *See Mosquera-Murillo*, 2018 WL 6267765, at *6. So in the district court's view, the government's promise not to present evidence did not prevent the court itself from finding that a role enhancement applied. *See id.* Maybe. But the issue here is not about the power of the court, but whether the *government*'s conduct breached the plea agreement when it asked the court to find that Moreno-Membache was a supervisor or manager as part of the sentencing proceeding and submitted evidence to that end on which the court relied. Or, more specifically, whether the plea agreement's ambiguous language could reasonably be

understood by Moreno-Membache as foreclosing that argument and introduction of evidence by the government.

In sum, based on the plain text of the plea agreement, the correlative wording of the Sentencing Guidelines, and the longstanding rule that ambiguity in a plea agreement is interpreted against the government, we hold that the government breached its agreement with Moreno-Membache when it argued that he was ineligible for Safety Valve relief because of any supervisory or managerial role he might have played in the offense. With so much at stake for the defendant, it is not too much to hold the government that drafted the plea agreement responsible for the misunderstanding that arose from a confusing, unclear ("inelegant[]"), and "unnecessary" hollow promise in the agreement, Oral Arg. Tr 21:8–9, 17:1–3.

**B**

The government argues that, regardless of his supervisory or managerial status, Moreno-Membache is still ineligible for Safety Valve relief because he "possess[ed] a firearm or other dangerous weapon" in connection with the conspiracy, *see* 18 U.S.C. § 3553(f)(2).

Specifically, the government argued to the district court that Moreno-Membache was ineligible for Safety Valve relief because he attended one *Mistby* planning meeting with a 9-millimeter pistol. The government supported this account with the testimony of a special agent who reviewed transcripts of interviews with the *Mistby*'s captain (a cooperating co-conspirator), who stated he saw the firearm, and a crewmember (another cooperating co-conspirator), who asserted he saw what appeared to be the outline of a gun in Moreno-Membache's waistband. J.A. 226–227.

15

But to render a defendant ineligible for relief, his possession of the firearm must have had "the potential of facilitating the drug trafficking offense." *United States v. Erazo*, 628 F.3d 608, 611 (D.C. Cir. 2011) (alteration omitted) (quoting *United States v. DeJesus*, 219 F.3d 117, 122 (2d Cir. 2000)); *see* 18 U.S.C. § 3553(f)(2) (firearm must be possessed "in connection with the offense").

In this case, the district court grounded its finding of facilitation on Moreno-Membache's "supervisory role" guarding the narcotics. *Mosquera-Murillo*, 2019 WL 3037533, at \*16. Specifically, the district court found that Moreno-Membache "had responsibility for supervising others in the storage and movement of the cocaine that ultimately was loaded onto the *Mistby*." *Id.* at \*14. The district court therefore found that, because Moreno-Membache played a supervisory role in safeguarding the cocaine and possessed a firearm, his firearm had the potential of facilitating the drug trafficking offense. *See id.* at \*16; *see also Erazo*, 628 F.3d at 611.

Because the district court specifically tied its facilitation determination to its prior finding that Moreno-Membache acted as a manager or supervisor, we are unable to disentangle the district court's firearm determination from the government's arguments in breach of the plea agreement asserting Moreno-Membache's supervisory or managerial position. As a result, "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case[.]" *Santobello*, 404 U.S. at 262; *see Pepper v. United States*, 562 U.S. 476, 507 (2011) ("Because a district court's 'original sentencing intent may be undermined by altering one portion of the calculus,' an appellate court when reversing one part of a defendant's sentence 'may vacate the entire sentence so that, on remand, the trial court can reconfigure the

sentencing plan[.]'") (formatting modified; first quoting *United States v. White*, 406 F.3d 827, 832 (7th Cir. 2005), then quoting *Greenlaw v. United States*, 554 U.S. 237, 253 (2008)); *United States v. Wolff*, 127 F.3d 84, 86 (D.C. Cir. 1997).

The dissenting opinion asserts that the district court's analysis of Moreno-Membache's firearm and his supervisory role were sufficiently distinct because, if Moreno-Membache guarded the cocaine while possessing a firearm, it would not matter if he was a lowly laborer in the conspiracy or a kingpin. Dissenting Op. 3–4. While we agree on the law, we disagree on the facts. When it found that Moreno-Membache guarded drugs, the district court expressly predicated its determination upon its specific *finding* that Moreno-Membache "had a supervisory role," *Mosquera-Murillo*, 2019 WL 3037533, at *16, an issue it likely would not have reached had the government complied with the plea agreement.

The dissenting opinion separately contends that the firearm could be connected to the offense because one cooperating co-conspirator claimed to have seen Moreno-Membache with a pistol at a planning meeting and another cooperating co-conspirator said that he saw what he perceived to be the outline of a pistol in Moreno-Membache's waistband at the *Mistby*'s launch site. But that was not the basis for the district court's facilitation finding. And this court is ill-equipped to make such a factual finding.[4]

---

[4] *Cf. United States v. Vaval*, 404 F.3d 144, 155 (2d Cir. 2005) (remanding for resentencing even though the district court was not influenced by the government's breach of the plea agreement because, "in order to preserve the integrity of plea bargaining procedures and public confidence in the criminal justice system, a defendant is generally entitled to the enforcement of a plea

Remand will allow the district court to make an independent determination regarding the firearm criterion, uninfluenced in any way by any of the government's improper argument or evidence presented to support Moreno-Membache's asserted supervisory or managerial status. More to the point, on remand Moreno-Membache will finally receive what he bargained for—a sentencing hearing freed of the government's argument or evidence that he was a manager or supervisor in the conspiracy.

**IV**

For all of those reasons, we reverse the ruling of the district court, vacate Moreno-Membache's sentence, and remand to the district court for further proceedings consistent with this opinion.

*So ordered.*

---

agreement without showing tangible harm resulting from a breach"); *see also United States v. Yah*, 500 F.3d 698, 704 (8th Cir. 2007) (remanding for resentencing, even where "[t]he district court specifically stated that the government's [breach] was irrelevant" to the imposed sentence because "'[t]he fact that the district court stated the government's remark did not influence its decision does not ameliorate the government's breach.'") (quoting *United States v. McCray*, 849 F.2d 304, 305 (8th Cir. 1988)).

KATSAS, *Circuit Judge*, dissenting: Antonio Moreno-Membache, who belonged to a smuggling operation in Colombia, pleaded guilty to an offense carrying a minimum prison sentence of ten years. The plea bargain preserved his ability to seek a lower sentence under 18 U.S.C. § 3553(f), popularly known as the Safety Valve, which permits a sentence below statutory minima if the district court makes five findings favorable to the defendant. One of them is that the defendant was not an "organizer, leader, manager, or supervisor of others in the offense." *Id.* § 3553(f)(4). Another is that the defendant did not "possess a firearm ... in connection with the offense." *Id.* § 3553(f)(2). The district court here found that Membache satisfied neither requirement, so it imposed a ten-year sentence. *United States v. Mosquera-Murillo*, No. 13-cr-00134-BAH, 2019 WL 3037533, at *12–16 (D.D.C. July 11, 2019).

In vacating the sentence, my colleagues reason in two steps. First, the government breached the plea bargain by arguing that Membache was ineligible for Safety Valve relief because he supervised others in the offense. *Ante* at 9–14. Second, evidence of such supervision may have improperly influenced the district court's finding that Membache possessed a firearm in connection with the offense. *Id.* at 14–17. I will assume the first point for the sake of argument. But as explained below, I disagree with the second.

A

Section 3553(f)(4) disqualifies a defendant from Safety Valve relief if he "possess[ed] a firearm ... in connection with the offense." Possession happens "in connection with the offense" if the firearm has the "potential of facilitating" the offense, *United States v. Erazo*, 628 F.3d 608, 611 (D.C. Cir. 2011)—as when, for example, a firearm is "present in order to protect contraband," *United States v. Evans*, 888 F.2d 891, 896 (D.C. Cir. 1989). The defendant must prove eligibility for Safety Valve relief by a preponderance of the evidence. *United*

*States v. Mathis*, 216 F.3d 18, 29 (D.C. Cir. 2000). We review findings about such eligibility only for clear error. *United States v. Gales*, 603 F.3d 49, 53 (D.C. Cir. 2010).

The district court did not clearly err in finding that Membache possessed a firearm in connection with his offense. In his guilty plea, Membache acknowledged membership in an organization that grew and stored large amounts of cocaine and marijuana in Colombia, then used speedboats to smuggle the drugs into Panama. Two members of the organization told the government that Membache possessed a firearm in connection with the smuggling. The captain of the ill-fated *Mistby* saw Membache carry a 9-millimeter pistol—and at one point openly display it—during a planning meeting before the boat's launch. A *Mistby* crew member likewise saw Membache with a pistol tucked into his waistband at the launch site. The district court credited these statements and thus concluded that Membache possessed a firearm. *Mosquera-Murillo*, 2019 WL 3037533, at *15–16. The court then found that Membache possessed the firearm "in connection with" his offense because his job included "safeguarding" the contraband. *Id.* at *16. That conclusion rested in part on statements from five co-conspirators—including two of Membache's brothers—that Membache was responsible for guarding and moving the drugs in Colombia. *Id.* at *6–7.

Membache asks us to disregard this evidence because it was introduced through the hearsay testimony of a government investigator. But sentencing courts may consider all evidence of a defendant's "background, character, and conduct," 18 U.S.C. § 3661, including reliable hearsay, *United States v. Leyva*, 916 F.3d 14, 26 (D.C. Cir. 2019). And we review the decision to consider hearsay only for abuse of discretion. *Id.* at 25. Here, the district court noted that the co-conspirators' statements corroborated one another, the captain's statements

3

about Membache were consistent, and an intercepted phone call verified some of the captain's other statements. *Mosquera-Murillo*, 2019 WL 3037533, at *14–16. Under these circumstances, the district court did not abuse its discretion in considering the co-conspirators' statements. *See*, *e.g.*, *Leyva*, 916 F.3d at 25–26; *United States v. Jones*, 744 F.3d 1362, 1367–68 (D.C. Cir. 2014).

B

My colleagues take a different approach. They do not contest the factual support for the finding that Membache possessed a firearm in connection with his offense. Instead, they worry that this finding may have rested on "improper argument or evidence" that Membache supervised others. *Ante* at 17. And they order the district court to reconsider the firearm issue without any "argument or evidence" that Membache was a supervisor. *Id.* This approach is wrong for two reasons.

First, the question whether Membache possessed a firearm in connection with his offense is distinct from the question whether Membache supervised others. The district court recognized this by devoting separate sections of its opinion to the evidence bearing on each question. *See Mosquera-Murillo*, 2019 WL 3037533, at *12–16. To be sure, in addressing the firearm issue, the court did make one reference to Membache's supervisory role: "Moreover, as already established, Membache had a supervisory role in the *Mistby* offense, and played a role in safeguarding cocaine while it was transported throughout Colombia onto go-fast vessels for shipment elsewhere. Given this role in guarding the narcotics, his firearm had the potential of facilitating the drug trafficking offense." *Id.* at *16 (cleaned up). The court's analysis focused on Membache's conduct in "safeguarding" or "guarding" illegal drugs, not on his exact position in the criminal

enterprise. And that focus makes sense, for the court's conclusion—that the firearm helped Membache guard the contraband—follows regardless of whether Membache acted as one pawn among many, as a mid-level supervisor, or as a high-level organizer. Similarly, once the court credited testimony that Membache (i) displayed a pistol "at a planning meeting prior to the launch of the *Mistby*" and (ii) possessed a pistol "at the launch site of the *Mistby*," *Mosquera-Murillo*, 2019 WL 3037533, at *15, the conclusion that he possessed the weapon "in connection with the offense" follows inexorably. The court's stray reference to "supervisory role" made no difference in its resolution of the firearm issue.

In any event, the plea bargain permitted the government to present all evidence relevant to the firearm issue. The agreement expressly allowed the government both to argue that Membache "does not meet the criteria to qualify for Safety Valve relief" and to "inform the Court" of "all relevant information concerning the offenses committed." J.A. 132. To be sure, the agreement also barred the government from seeking "any of the adjustments set out in" chapter 3.B of the Sentencing Guidelines, *id.*, which contains adjustments for the defendant's "role in the offense," U.S.S.G. § 3B1. And because the Safety Valve requires a finding that "the defendant was not an organizer, leader, manager, or supervisor of others in the offense, *as determined under the sentencing guidelines*," 18 U.S.C. § 3553(f)(4) (emphasis added), there is at least arguably no distinction between statutory arguments under section 3553(f)(4) and guideline-adjustment arguments under chapter 3.B. But whatever the force of this point to bar the government from opposing Safety Valve relief under section 3553(f)(4), it cannot possibly bar the government from opposing Safety Valve relief under section 3553(f)(2)—or from introducing any evidence relevant to that provision. So if Membache's supervisory role were relevant to the firearm

5

question, the government could introduce evidence of it for that purpose, and the district court could so consider it. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). At most, that is how the district court assessed the firearm issue.

In sum, the district court was permitted to consider all evidence bearing on whether Membache possessed a firearm in connection with his drug trafficking, and the court permissibly resolved that question against him. Because that was enough to foreclose Safety Valve relief, I would affirm Membache's ten-year sentence.